# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **03 C 6083** | **DATE** | **APRIL 19, 2004** |
| **CASE TITLE** | **MIGUEL LARA-UNZUETA v. DONALD MONICA, etc.** | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/reset for] _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/reset for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/reset for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Respondent's motion to dismiss [3-1] is granted. Petitioner is granted leave to file a motion for reconsideration within three weeks after the date of today's order.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 4/19/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| cw | courtroom deputy's initials | | mqm mailing initials | |

Date/time received in central Clerk's Office

MIGUEL LARA-UNZUETA,                )
                                    )
                Petitioner,         )
                                    )
        v.                          )      No. 03 C 6083
                                    )
DONALD MONICA, in his individual    )
capacity as Local District          )
Director of the Chicago Office      )
for the Department of Homeland      )
Security Bureau of Immigration      )
and Customs Enforcement,            )
                                    )
                Respondent.         )

## MEMORANDUM OPINION AND ORDER

Before this court is Miguel Lara-Unzueta's petition for a writ of habeas corpus related to his 1998 removal from the United States. In March 1996, based on a plea of guilty, Lara-Unzueta was convicted on state charges of attempted first-degree murder and armed violence and sentenced to six years' incarceration. Because these were aggravated felonies, the conviction made Lara-Unzueta, who was a permanent resident alien, subject to deportation. However, since he had been in the United States for more than seven years, and assuming he remained in state custody for no more than five years, Lara-Unzueta would have been eligible to apply for discretionary relief from deportation under

§ 212(c) of the Immigration and Naturalization Act, formerly codified as 8 U.S.C. § 1182(c). That version of § 212(c) was still in effect as of Lara-Unzueta's March 1, 1996 state conviction.

Later in 1996, prior to Lara-Unzueta's release from state custody, § 212(c) was amended twice. Initially, the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (April 24, 1996), amended § 212(c) to make persons who had been convicted of certain offenses, including the type committed by Lara-Unzueta, ineligible for § 212(c) relief. Later in the year, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597 (Sept. 30, 1996), deleted § 212(c) in its entirety and replaced it with 8 U.S.C. § 1229b. Section 1229b permits the Attorney General to cancel removal for a narrow class of people. Such discretion does not apply to persons, such as Lara-Unzueta, who have been convicted of an aggravated felony. See 8 U.S.C. § 1229b(a)(3). The Board of Immigration Appeals ("BIA") initially held that the AEDPA amendment was applicable to persons whose proceedings were pending on or after April 24, 1996, but that persons who had actually submitted § 212(c) applications that were pending, granted, or on appeal as of that date would be considered under the pre-AEDPA version of § 212(c). See In re

<u>Soriano</u>, 21 I. & N. Dec. 516, 518-21 (1996). That decision was subsequently modified by an Attorney General Opinion concluding that the AEDPA amendment was also applicable to those who had pending § 212(c) applications as of April 24, 1996. <u>See</u> Op. Att'y Gen., 1997 WL 33347804 (Feb. 21, 1997). As to the IIRIRA amendment to § 212(c), the BIA applied it only to proceedings commenced on or after the IIRIRA's April 1, 1997 effective date. <u>See</u> <u>In re Rodriguez-Carrillo</u>, 22 I. & N. Dec. 1031 (1999).

Lara-Unzueta's deportation (removal) proceeding was commenced in January 1997, after the April 24, 1996 effective date of the AEDPA, but prior to the effective date of the IIRIRA. Before the Immigration Judge ("IJ"), Lara-Unzueta argued in favor of being granted § 212(c) relief, expressly relying upon the pre-AEDPA version of the statute. In an August 14, 1997 oral decision, the IJ held that the AEDPA version of § 212(c) applied and that Lara-Unzueta's conviction prevented him from being eligible for consideration for § 212(c) relief. The IJ terminated Lara-Unzueta's permanent resident status and ordered him removed. Lara-Unzueta unsuccessfully appealed to the Board of Immigration Appeals ("BIA"). The issues raised before the BIA will be discussed in further detail below. On June 25, 1998, Lara-Unzueta was removed and ordered not to return to the United States without the permission of the Attorney General.

In October 2002, Lara-Unzueta was found in the United States[1] and charged with having improperly returned in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). On December 5, 2003, following a bench trial, Lara-Unzueta was found guilty as charged. An order to that effect was entered on the docket on February 6, 2004. On April 7, 2004, Lara-Unzueta was sentenced to 65 months' incarceration to be followed by 3 years' supervised release. The judgment was entered on the docket on April 9, 2004. The judgment also provides: "Upon the completion of the defendant's term of imprisonment, he is to be surrendered to a duly authorized official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act." See United States v. Lara-Unzueta, No. 02 CR 995 (N.D. Ill.). See also United States v. Lara-Unzueta, 287 F. Supp. 2d 888, 892 (N.D. Ill. 2003) ("Lara-Unzueta") (denying motion to dismiss indictment).

On August 29, 2003, Lara-Unzueta filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The named respondent is Donald Monica, who is denominated as the Local District Director of the Chicago Office for the Department of Homeland Security Bureau of Immigration and Customs Enforcement ("BICE"). This bureau performs pertinent functions pertaining to

---

[1]In his habeas corpus petition, Lara-Unzueta alleges that he actually returned to the United States in February 1999.

removal that were formerly performed by the Immigration and Naturalization Service ("INS"). Lara-Unzueta complains that, during the deportation proceedings leading to his 1998 removal, the IJ and BIA incorrectly applied the AEDPA in determining that he was not eligible for consideration of § 212(c) relief. Three years after his removal, the Supreme Court held that the AEDPA and IIRIRA amendments did not apply to a person, like Lara-Unzueta, who had pleaded guilty to an aggravated felony prior to April 24, 1996. <u>See</u> <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001). Respondent does not dispute that, in light of <u>St. Cyr</u>, the rulings of the IJ and BIA as to the applicable version of § 212(c) were incorrect. If he had been granted § 212(c) relief, Lara-Unzueta could have remained in this country following his release from state custody. That would have precluded the possibility of his recent conviction for improperly returning to this country.

> In the petition, Lara-Unzueta states that he:
>
> seeks by his petition for review to challenge the agency decision on two levels. First, that in various respects the proceedings leading to that decision violated his constitutional due process rights. Second, that the decision itself involved an abuse of agency discretion by failing properly to weigh the relevant factors.

Lara-Unzueta is not clear as to the precise relief that he seeks. It appears that he seeks an order that effectively directs the BICE to exercise its discretion and consider his eligibility for

§ 212(c) relief.  It does not appear that he seeks an order effectively directing the BICE to grant § 212(c) relief or vacate the removal order.[2]

Respondent moves to dismiss the habeas petition.[3] Petitioner complains that respondent improperly relies upon documents outside the petition which cannot be considered on a Fed. R. Civ. P. 12(b)(6) motion.  Rules Governing Section 2254 Cases in the United States District Courts ("2254 R.") may also be applied in the present type of habeas proceedings.  See 2254 R. 1(b); Stewart v. Ashcroft, 2002 WL 31133105 *1 n.1 (N.D. Ill. July 17, 2002); Momennia v. Estrada, 2003 WL 21318323 *1 n.1 (N.D. Tex. May 21, 2003).  It is appropriate to consider the documents that respondent has presented from the underlying removal proceeding and related criminal proceeding.  See 2254 R. 5.  Petitioner does not dispute the authenticity of any of the

---

[2]At one point in his petition, which was filed prior to his recent conviction, Lara-Unzueta refers to finding his removal to have been "factually defective" and therefore insufficient as a "predicate" to his recent conviction.  He also refers to this being a basis for terminating the recent criminal proceedings on "legal sufficiency grounds."  See Petition at 4.  Since the Warden where he was then being held was not named as a respondent, it will not be assumed that, through his present petition, Lara-Unzueta was directly seeking release from his pending federal criminal proceeding nor, at this point, to overturn his recent federal criminal conviction.

[3]Neither parties' pleadings adequately address the maze of applicable statutes and rules.  It is incumbent on the parties to adequately raise material facts and point to pertinent law and procedure so that the resulting ruling does not fail to recognize the applicability of a particular rule or exception.

documents.  Additionally, even if respondent's motion should be considered one strictly pursuant to Fed. R. Civ. P. 12(b)(6), it is appropriate to take judicial notice of such documents and consider them on a Rule 12(b)(6) motion.  See United States ex rel. Bidani v. Lewis, 2001 WL 1609377 *4 (N.D. Ill. Dec. 14, 2001).  Also, to the extent respondent raises jurisdictional issues, respondent's motion would be a Rule 12(b)(1) motion on which this court may consider allegations and proof outside the complaint and resolve factual issues.  See English v. Cowell, 10 F.3d 434, 437 (7th Cir. 1993); Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal, 859 F.2d 1302, 1310 n.11 (7th Cir. 1988); Crawford v. United States, 796 F.2d 924, 928-29 (7th Cir. 1986); United States ex rel. Bidani v. Lewis, 1998 WL 1820753 *3 (N.D. Ill. Dec. 29, 1998).

The federal statute under which plaintiff was recently convicted contains a procedure permitting the defendant to collaterally attack the removal proceeding that provides a basis for the unlawful reentry.  See 8 U.S.C. § 1326(d).  In the criminal proceeding, Lara-Unzueta collaterally attacked the removal order that is the subject of the present habeas corpus proceeding.  The court rejected that challenge, which requires a showing that the defendant exhausted administrative remedies, he was deprived of the opportunity for judicial review, and the

removal order was fundamentally unfair.  See id.; Lara-Unzueta,
287 F. Supp. 2d at 891-93.

Respondent contends that jurisdiction over the habeas
corpus petition is lacking because Lara-Unzueta is not in his
custody.  If not in the custody of the government at the time the
present petition was filed, Lara-Unzueta would have no possible
basis for pursuing a habeas petition.  Samirah v. O'Connell, 335
F.3d 545, 549-51 (7th Cir. 2003).  Lara-Unzueta was in the
custody of the United States government at the time he filed this
habeas petition, but the direct basis for his custody was the
criminal proceeding, not an action by the BICE.  Any habeas
petition based on the federal criminal conviction could not have
been filed until after the criminal judgment was entered and
appeals exhausted, and would have to comply with the procedural
requirements of 28 U.S.C. § 2255.  Moreover, jurisdiction over
the present habeas petition is lacking unless Lara-Unzueta was in
the custody of the named respondent at the time the petition was
filed.  Robledo-Gonzales v. Ashcroft, 342 F.3d 667, 673-74 (7th
Cir. 2003); Samirah, 335 F.3d at 551-52.  At the time the
petition was filed, Lara-Unzueta was being held at the
Metropolitan Correctional Center ("MCC"), in the physical custody
of the Warden of the MCC.[4]  See Al-Marri v. Rumsfeld, 360 F.3d

_____

[4]Respondent contends Lara-Unzueta has been in the custody
of the United States Marshal.  The Warden of the MCC, however,
would appear to be the custodian with physical custody, at least

707, 708-09 (7th Cir. 2004); <u>Robledo-Gonzales</u>, 342 F.3d at 673.

Still, a detained person may have more than one custodian. A person in the direct physical custody of one custodian, may also be considered to be in the custody of another who has the legal right to control the detainee. See <u>Al-Marri</u>, 360 F.3d at 711-12. Under at least some circumstances, a person who has filed a detainer with the direct custodian may also be considered the custodian of the detainee. See <u>Vargas v. Swan</u>, 854 F.2d 1028, 1030-33 (7th Cir. 1988); <u>Lopez-Moreno v. INS</u>, 2002 WL 31133097 *1 (N.D. Ill. July 16, 2002); <u>Setharatsomphou v. Reno</u>, 1999 WL 755292 *3 (N.D. Ill. Sept. 27, 1999); <u>Echenique v. Perryman</u>, 1996 WL 554546 *3-4 (N.D. Ill. Sept. 24, 1996). On October 18, 2002, that is prior to the filing of the habeas petition, INS filed detainers with both the MCC and the Marshal. Those detainers remain pending as detainers of BICE, INS's successor. The detainers themselves do not contain sufficient information to determine that they placed Lara-Unzueta in respondent's custody. See <u>Vargas</u>, 854 F.2d at 1032-33. The fact that Lara-Unzueta's sentencing order provides that he is to be released to BICE for removal proceedings, however, shows that BICE presently has the intent to follow through on the detainers

---

until Lara-Unzueta is transferred following his recent sentencing. For present purposes, it is unnecessary to determine who was the custodian with physical custody since that person was not named as a respondent.

and take custody upon his release from incarceration. Since there is no contrary indication, the only reasonable inference is that BICE also had such an intent as of the date the habeas petition was filed.

Based on the pending detainers, Lara-Unzueta was in the custody of the local BICE district as of the date he filed his habeas petition. Therefore, this court would not lack jurisdiction over the habeas petition based on failure to name an appropriate custodian. Even if, following his sentencing, Lara-Unzueta is transferred out of this district before the habeas proceeding is concluded, this court would retain jurisdiction. See Al-Marri, 360 F.3d at 712; Ward v. United States Parole Commission, 804 F.2d 64, 66 (7th Cir. 1986); Coburn v. Reno, 1999 WL 138808 *2 (N.D. Ill. March 5, 1999).

Respondent also contends that jurisdiction is lacking because there is no case or controversy regarding Lara-Unzueta's 1998 deportation because he has already been removed from the United States based on that proceeding. However, even after actual removal, the 1998 removal order continues to affect Lara-Unzueta's ability to return to the United States, as well as his criminal liability in the recent criminal proceeding. Therefore, there is a live case or controversy. Swaby v. Ashcroft, 357 F.3d 156, 159-61 (2d Cir. 2004); Leitao v. Reno, 311 F.3d 453, 456 (1st Cir. 2002). See also Sekyere v. United States, 1990 WL

(N.D. Ill. May 21, 1990). However, the fact that Lara-Unzueta has previously been removed based on the removal order at issue may otherwise preclude the exercise of jurisdiction. See 8 U.S.C. § 1105a(c) (1995); Robledo-Gonzales, 342 F.3d at 674 n.7 (dictum). Although respondent has not raised the applicability of § 1105a(c),[5] it should be considered sua sponte because it contains jurisdictional provisions. Before discussing that statute, however, preclusion should be considered since that could affect determinations pertinent to jurisdiction.

Respondent contends that the habeas petition is barred by the res judicata effect of the criminal proceeding. Since the proceeding relied upon for a preclusive effect is a proceeding in federal court, federal law as to res judicata (claim preclusion) would apply. Heck v. Humphrey, 512 U.S. 477, 488 n.9 (1994); EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1289 n.4 (7th Cir. 1993); Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 525 (7th Cir. 1985); International Star Registry of Illinois v. Bowman-Haight Ventures, Inc., 2001 WL 1403004 *2 (N.D. Ill. Nov. 9, 2001). A federal judgment has a res judicata effect if there is "(1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both

---

[5]In a footnote at the end of his opening brief, and without citing to the source for any such requirement, respondent conclusorily refers to a failure to exhaust administrative remedies. Section 1105a(c) contains an exhaustion requirement which will also be addressed below.

the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." <u>Tice v. American Airlines, Inc.</u>, 162 F.3d 966, 970 (7th Cir. 1998), <u>cert. denied</u>, 527 U.S. 1036 (1999); <u>Harris Chernin</u>, 10 F.3d at 1289; <u>International Star</u>, 2001 WL 1403004 at *2.

At the time it was raised, respondent's invocation of <u>res judicata</u> was premature. Although Lara-Unzueta had already been found guilty at the time respondent filed his motion to dismiss, there was no final judgment upon which a preclusive effect could be based until Lara-Unzueta was sentenced and the judgment entered on the docket. <u>See</u> <u>Clay v. United States</u>, 123 S. Ct. 1072, 1076 (2003); <u>Restatement (Second) of Judgments</u> § 13 (1981); Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 4432 (2d ed. 2002). However, now a judgment has been entered. The fact that Lara-Unzueta still has time to and may appeal his conviction, does not prevent the conviction from being a final judgment that may be accorded a preclusive effect. <u>See</u> <u>Prymer v. Ogden</u>, 29 F.3d 1208, 1213 n.2 (7th Cir.), <u>cert. denied</u>, 513 U.S. 1057 (1994) (<u>dictum</u> noting that "it is clear that the [Seventh Circuit] has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending"); <u>Rice v. Department of Treasury</u>, 998 F.2d 997, 999 (Fed. Cir. 1993); <u>Berry v. Illinois</u>

<u>Department of Human Services</u>, 2001 WL 111035 *14 (N.D. Ill.
Feb. 2, 2001); <u>Abbott Laboratories v. Dey, L.P.</u>, 110 F. Supp. 2d
667, 671 (N.D. Ill. 2000); <u>Federal Practice & Procedure</u> § 4433.
The judgment is presently final and may now be accorded a
preclusive effect if the other elements of preclusion are
satisfied.

The third element of <u>res judicata</u> is that there be an
identity of the parties or their privies.  Lara-Unzueta is a
party to both proceedings.  In the present case, respondent is
before the court in his official capacity as an employee of BICE,
an agency of the federal government.[6]  The criminal prosecution
was brought in the name of the United States, though prosecuted
by a different federal office than BICE.  As a general matter,
however, the different agencies of the federal government are
considered to be in privity for purposes of <u>res judicata</u>,
including officers of an agency who are parties in their official
capacity.  <u>See</u> <u>Federal Practice & Procedure</u> § 4458 at 560-62;
<u>Marshall v. National Association of Letter Carriers</u>, 2003 WL
22519869 *9 (S.D.N.Y. Nov. 7, 2003).  Identity of parties is
satisfied in the present case.

_____

[6]Although Lara-Unzueta captioned this case as being
against respondent in his individual capacity, a habeas
petition is brought against the custodian in his or her
official capacity.  <u>Del Raine v. Carlson</u>, 826 F.2d 698, 701
(7th Cir. 1987); <u>Graham v. Lappin</u>, 2001 WL 640963 *2 (S.D. Ind.
June 8, 2001).

The problem with applying res judicata is the failure to satisfy the second element. The cause of action in the criminal proceeding was a criminal charge of being illegally in the United States in 2002. The cause of action underlying the habeas proceeding is a challenge to Lara-Unzueta's 1998 removal from this country. Although the propriety of removal is an underlying issue in the criminal case, the two proceedings do not involve the same causes of action. Related criminal and civil proceedings involve distinct causes of action. See Federal Practice & Procedure § 4474 at 420-22. That is especially true here, where the subject matter of the two proceedings is distinct, that is, one principally concerns being illegally in the country in 2002 and the other principally concerns the propriety of removal in 1998. Even if, in the criminal proceeding, it had been found that § 1326(d) had been satisfied, that would not result in the removal order being vacated or otherwise overturned; it would only result in the indictment in the criminal proceeding being dismissed. Since identity of the causes of action is not satisfied, the criminal judgment will not be accorded a res judicata effect.

Since not raised by respondent, the related principal of collateral estoppel (issue preclusion) need not be considered. It is noted, though, that the issues actually decided in the criminal proceeding are not necessarily pertinent to either or

both claims raised in the present habeas proceeding. In the criminal proceeding, it was decided that Lara-Unzueta failed to pursue judicial procedures that were necessary to qualify for relief under § 1326(d). See Lara-Unzueta, 287 F. Supp. 2d at 892. Alternatively, it was decided that the procedures were not fundamentally unfair, which is a requirement for § 1326(d) relief, in that there was no due process violation. See id. at 892-93.[7] Either would have been a sufficient basis for denying § 1326(d) relief.[8] Where a judgment rests on two independent and sufficient findings or holdings, neither is afforded a collateral estoppel effect because neither finding or holding was, by itself, essential to the decision. See Peabody Coal Co. v. Spese, 117 F.3d 1001, 1008 (7th Cir. 1997) (en banc); Simmons v. United States Corps of Army Engineers, 1996 WL 1323088 *14 (S.D. Ill. Dec. 18, 1996); Restatement (Second) of Judgments § 27 cmt. i (1981). See also Federal Practice & Procedure § 4421

---

[7]This issue, if accorded a preclusive effect, would likely preclude Lara-Unzueta from successfully contending in the present proceeding that his due process rights were violated. However, it would not preclude the claim that BICE committed legal error by failing to apply § 212(c) and consider whether Lara-Unzueta was entitled to relief under that statute.

[8]The court also indicated that the administrative exhaustion requirement may not have been satisfied, but did not conclusively resolve that issue. See Lara-Unzueta, 287 F. Supp. 2d at 891-92. Since there was no conclusive decision on this issue, it could not be accorded a collateral estoppel effect even if the other requirements for collateral estoppel were satisfied.

at 564-74. Even if the ultimate holding that Lara-Unzueta was not entitled to § 1326(d) relief could be accorded a collateral estoppel effect in the present proceeding, that is not an issue in the present proceeding. The issue in the present proceeding is not whether § 1326(d) was satisfied, but whether BICE should be required to consider whether Lara-Unzueta was entitled to any relief under § 212(c).

As was previously indicated, the parties have failed to consider the effect of 8 U.S.C. § 1105a(c), which contains three jurisdictional provisions that could preclude consideration of the merits of Lara-Unzueta's petition. <u>See</u> <u>Robledo-Gonzales</u>, 342 F.3d at 674 n.7 (<u>dictum</u>). Prior to the AEDPA, that statute provided:

> An order of deportation or of exclusion
> shall not be reviewed by any court if the alien
> has not exhausted the administrative remedies
> available to him as of right under the
> immigration laws and regulations or if he has
> departed from the United States after the
> issuance of the order. Every petition for review
> or for habeas corpus shall state whether the
> validity of the order has been upheld in any
> prior judicial proceeding, and, if so, the nature
> and date thereof, and the court in which such
> proceeding took place. No petition for review or
> for habeas corpus shall be entertained if the
> validity of the order has been previously
> determined in any civil or criminal proceeding,
> unless the petition presents grounds which the
> court finds could not have been presented in such
> prior proceeding, or the court finds that the
> remedy provided by such prior proceeding was
> inadequate or ineffective to test the validity of
> the order.

8 U.S.C. § 1105a(c) (1995).

In accordance with the IIRIRA's "transitional rules," the pre-AEDPA version of § 1105a(c) is applicable to Lara-Unzueta's habeas petition because his removal proceedings were commenced prior to April 1, 1997 and no final removal order was entered prior to October 31, 1996. See IIRIRA § 309(c); Robledo-Gonzales, 342 F.3d at 674 n.7 (dictum); Osei v. INS, 305 F.3d 1205, 1206 n.1 (10th Cir. 2002); Goonsuwan v. Ashcroft, 252 F.3d 383, 386 (5th Cir. 2001); Kendy v. Ashcroft, 2003 WL 21448380 *2 n.1 (N.D. Tex. May 14, 2003); Adebano v. United States Department of Justice, 2001 WL 863548 *2 (S.D.N.Y. July 30, 2001); Calderon v. Reno, 39 F. Supp. 2d 943, 949-51 (N.D. Ill. 1998).

The first sentence of § 1105a(c) refers to being "reviewed by any court." In the immigration context, the terms "judicial review" and "court . . . jurisdiction to review" have generally been construed as meaning direct review, and not including habeas corpus proceedings. See St. Cyr, 533 U.S. at 311-14; Robledo-Gonzales, 342 F.3d at 677. However, in light of the entire text of § 1105a(c), including its subsequent references to habeas, the first sentence has been read as applying to both direct review and habeas corpus proceedings. Robledo-Gonzalez, 342 F.3d at 674 n.7 (dictum); Kurfees v. INS, 275 F.3d 332, 336 (4th Cir. 2001); Goonsuwan, 252 F.3d at 386-87; Calderon, 39 F. Supp. 2d at 954; Gurbisz v. INS, 675 F. Supp.

436, 441 (N.D. Ill. 1987). See also Duvall v. Elwood, 336 F.3d 228, 231-32 & n.5 (3d Cir. 2003) (holding, in light of St. Cyr and language of repealed § 1105a(c), that exhaustion requirement of current 8 U.S.C. § 1252(d)(1), which contains "reviewed by any court" language, applies to habeas proceedings); Beharry v. Ashcroft, 329 F.3d 51, 60-62 (2d Cir. 2003) (discussing whether the § 1105a(c) exhaustion requirement would still be read as applicable to habeas proceedings even in light of St. Cyr, but leaving the question open because the case could be resolved on other grounds). The exhaustion, departure, and "previously determined" provisions of § 1105a(c) apply to Lara-Unzueta's habeas corpus petition. Although respondent has not adequately raised any of these provisions, they are jurisdictional. See Stone v. INS, 514 U.S. 386, 399 (1995); Awad v. Ashcroft, 328 F.3d 336, 340 (7th Cir. 2003); Kurfees, 275 F.3d at 336; Goonsuwan, 252 F.3d at 385-87; Toma v. Turnage, 825 F.2d 1400, 1403 (9th Cir. 1987); Kendy, 2003 WL 21448380 at *2; Calderon, 39 F. Supp. 2d at 954. Therefore, this court must consider these issues even if not raised by the parties. Goonsuwan, 252 F.3d at 385. However, since these issues were not raised by respondent, Lara-Unzueta has not had an opportunity to address them. Therefore, before making any final ruling dismissing the petition on any of these jurisdictional grounds, Lara-Unzueta will be provided an opportunity to address them.

In a footnote, respondent asserts that Lara-Unzueta has not satisfied the exhaustion requirement, citing to Lara-Unzueta, 287 F. Supp. 2d at 891-92. In that ruling, the court indicated that Lara-Unzueta had not adequately raised before the BIA the issue that pre-AEDPA law should be applied. The court noted that there was the possibility of arguing that raising that issue before the BIA would be futile, but the court indicated that futility was not likely to be a successful argument. The court, however, declined to rule on exhaustion, instead ruling that Lara-Unzueta failed to satisfy two other requirements for § 1326(d) relief. As previously discussed, there is no preclusive effect from the ruling in the criminal proceeding.

If Lara-Unzueta failed to adequately present an issue to the BIA, he may not raise that issue in the present habeas proceeding. Goonsuwan, 252 F.3d at 389; Calderon, 39 F. Supp. 2d at 954; Kendy, 2003 WL 21448380 at *2.[9] Respectfully disagreeing with the dictum in Lara-Unzueta, the administrative documents that have been provided support that Lara-Unzueta adequately

_____

[9]Kurfees, 275 F.3d at 336, states: "By not appealing her 1993 deportation order and the 1997 denial of the Motion to Reopen first to the BIA and subsequently to this court, Kurfees failed to exhaust the administrative remedies available to her." No other case has been found that would support reading the "administrative remedies available as of right" language of § 1105a(c) as including an appeal of the BIA's decision to the courts. That would be inconsistent with the plain meaning of "administrative."

raised before the BIA the issue of applying the pre-AEDPA version
of § 212(c).

In his notice of appeal to the BIA, Lara-Unzueta listed
as one of the grounds for his appeal: "This case should be
considered under the law in effect before April 24, 1996." The
less than four-page long BIA brief does not contain any well-
developed arguments. In that brief, Lara-Unzueta noted that the
IJ had applied § 212(c) as amended by the AEDPA. He then argued
that his crime was not one of "moral turpitude" that would be
excluded from § 212(c) relief under the AEDPA, concluding this
paragraph by stating "this type of confrontation did not involve
moral turpitude and AEDPA should not apply to this case." It is
ambiguous whether the ending phrase is a separate argument or
simply an assertion that the AEDPA does not exclude the
application of § 212(c) because there was no crime of moral
turpitude. In light of the grounds listed in the notice of
appeal, the phrase could be construed as being a separate
argument. The INS's one-paragraph argument in response simply
urges the BIA to accept the findings and conclusions of the IJ.
If only the notice of appeal and BIA briefs were to be
considered, it could very well be found that Lara-Unzueta did not
adequately raise the issue that pre-AEDPA law should apply to his
request for § 212(c) relief. However, there is another factor
that supports finding otherwise.

It is a well established principle for habeas litigation
under 28 U.S.C. § 2254 that, where the pertinent state court
reaches the merits of an issue, that issue will not be considered
waived even though the defendant may have failed to adequately
argue the issue in his or her briefs before that court.  See
Robertson v. Hanks, 140 F.3d 707, 709 (7th Cir.), cert. denied,
525 U.S. 881 (1998); United States ex rel. Vanskike v. O'Leary,
719 F. Supp. 659, 665 (N.D. Ill. 1989).  In ruling on Lara-
Unzueta's appeal, the BIA first rejected the argument that it
could ignore the elements of his conviction and instead find that
he did not have the intent to commit the crime to which he had
pleaded guilty.[10]  It then stated:

> Turning to the respondent's contention that
> he should be afforded consideration for a waiver
> of inadmissibility under section 212(c) of the
> Act, we find that he is statutorily ineligible
> for such relief as an "alien who is deportable by
> reason of having committed any criminal offense
> covered in section 241(a)(2)(A)(iii), (B), (C),
> or (D), or any offense covered by section
> 241(a)(2)(A)(ii) for which both predicate
> offenses are covered by section 241(a)(2)(A)(i)."
> See [AEDPA] § 440(d); Matter of Soriano, [21 I. &
> N. Dec. 516].

As was previously discussed, in Soriano, the BIA decided
that the AEDPA-amended version of § 212(c) applied to removal
proceedings pending on or after the AEDPA's April 24, 1996

_____

[10]The entire text of the BIA decision is approximately
one page in length.

effective date. See Soriano, 21 I. & N. Dec. at 519. Until subsequently overruled by the Attorney General, it was held that Soriano himself could proceed under pre-AEDPA law because he had already submitted a § 212(c) application prior to April 24, 1996. Thus, in the Soriano decision cited in Lara-Unzueta's BIA decision, the pre-AEDPA version of § 212(c) was considered. See Soriano, 21 I. & N. Dec. at 519-22. Thus, in Lara-Unzueta's decision, Soriano was not cited to support that Lara-Unzueta's particular convictions were the type excluded by the AEDPA version of § 212(c). Soriano would only have been cited for its holding that the AEDPA version of § 212(c) applied in Lara-Unzueta's situation. Therefore, it is clear that the BIA considered the merits of Lara-Unzueta's contention that the pre-AEDPA version of § 212(c) should be applied to his request for such relief. On the merits, the BIA rejected that contention. Therefore, Lara-Unzueta adequately exhausted his administrative remedies as to that issue. The exhaustion provision of § 1105a(c) does not prevent this court from having jurisdiction over Lara-Unzueta's habeas petition.

The last sentence of § 1105a(c) prevents this court from entertaining a habeas corpus petition if the "validity" of an order of deportation has been "previously determined" in another court proceeding. No cases have been found which consider the

relationship between this provision and § 1326(d).[11]  Section

1326(d) provides that, in a criminal prosecution under § 1326,

"an alien may not challenge the validity of the deportation

order" if the requirements set forth in § 1326(d) are

not satisfied.  As previously discussed, Lara-Unzueta, 287

F. Supp. 2d at 892-93, found that the § 1326(d) criteria were not

satisfied.  Therefore, in that proceeding, Lara-Unzueta was not

permitted to challenge the validity of the deportation order.

This would not be a bar to considering the present habeas corpus

petition.[12]

The other provision of § 1105a(c), however, appears to be

fatal to exercising jurisdiction over Lara-Unzueta's habeas

corpus petition.  That provision withdraws jurisdiction to

consider a habeas corpus petition "if [the alien] has departed

from the United States after the issuance of the order."  See

---

[11]Currently, 8 U.S.C. § 1252(d)(2) contains a provision
essentially identical to this provision of § 1105a(c).  Neither
has any case been found which considers the relationship between
§ 1252(d)(2) and § 1326(d).

[12]Even if the preliminary stages of a § 1326(d)
proceeding were to be considered a challenge to the validity of
the removal order, the only pertinent issue that was resolved was
that Lara-Unzueta was not deprived of due process.  As is
discussed below, this court agrees with that decision and
therefore would, in any event, deny relief on the due process
claim contained in the habeas petition.  Having decided the due
process issue, however, the criminal proceeding was not one in
which the failure to apply the correct version of § 212(c) was
considered.  The § 1326(d) proceeding clearly was not an adequate
and effective proceeding for considering that issue.

Adebano, 2001 WL 863548 at *2.  Although Lara-Unzueta is

presently in the United States, he previously departed after the

BIA affirmed the removal order.  In a similar posture, Robledo-

Gonzales, 342 F.3d at 674 n.7, indicated in dictum that there

would be no jurisdiction over a habeas petition.[13]  Robledo-

Gonzales had departed voluntarily.  See id. at 671.  The parties

do not expressly state that Lara-Unzueta departed involuntarily,

but that is implied.  In any event, the Seventh Circuit has

indicated that an involuntary departure would also deprive a

court of jurisdiction over a pending case.  See Sofinet v. INS,

188 F.3d 703, 708 (7th Cir. 1999).  See also Baez v. INS, 41

F.3d 19, 24 (1st Cir. 1994), cert. denied, 515 U.S. 1158 (1995).

Some courts have recognized an exception for departures that

involve a violation of procedural due process.  See id. at 22-23

(collecting cases).  Whether the Seventh Circuit would recognize

the due process exception need not be decided because, as

discussed below, there was no procedural due process violation.[14]

---

[13]In Robledo-Gonzales, the Seventh Circuit held that
the district court lacked jurisdiction over a habeas corpus
petition because the petitioner had named respondents who were
not his custodian.  342 F.3d at 673-74.  In a lengthy footnote
constituting dictum, the Seventh Circuit indicated that, even if
an appropriate custodian had been named, the district court would
have lacked jurisdiction because the petitioner had departed
after being deported, even though he had subsequently returned to
the United States.  See id. at 674 n.7.

[14]Lara-Unzueta may have been able to seek direct review
of the BIA's decision in the Court of Appeals, which recognizes
jurisdiction to consider substantial constitutional violations

Some courts of appeal have held that it was appropriate to exercise jurisdiction over habeas cases challenging removal orders even though the alien had departed after entry of the removal order. Those cases, however, are generally distinguishable. In Swaby, the removal proceedings were commenced after the April 1, 1997 effective date of the IIRIRA and therefore § 1105a(c) was inapplicable to the habeas petition. Id., 257 F.3d at 160 n.8. Chong v. District Director, INS, 264 F.3d 382-86 (3d Cir. 2001), also involved removal proceedings commenced after April 1, 1997. Other courts simply do not consider the possible effect of § 1105a(c)'s departure provision. See Leitao, 311 F.3d at 455-56; Smith v. Ashcroft, 295 F.3d 425, 428 (4th Cir. 2002). Because Lara-Unzueta departed after he was ordered removed, this court lacks jurisdiction over the habeas corpus petition unless there is an applicable exception to § 1105a(c)'s departure provisions.

The Ninth Circuit has held that § 1105a(c)'s departure provision does not apply if the "departure was in contravention

---

and "bizarre miscarriages of justice." See Robledo-Gonzales, 342 F.3d at 679-80; Lara-Ruiz v. INS, 241 F.3d 934 (7th Cir. 2001). However the time for such review of the 1998 BIA decision has long since expired. See 8 U.S.C. § 1105a(a)(1) (1995); 8 U.S.C. § 1252(b)(1) (1998). (The time limit contained in § 1105a(a)(1) does not apply to habeas petitions, Sabino v. Reno, 8 F. Supp. 2d 622, 636 n.28 (S.D. Tex. 1998), and § 2241 contains no time limit of its own.) Alternatively, it is possible that Lara-Unzueta could seek to reopen his removal proceedings and proceed from there. See Robledo-Gonzales, 342 F.3d at 676-81.

of due process." Mendez v. INS, 563 F.2d 956, 958 (9th Cir. 1977). Some circuits have followed that holding and others have rejected it. See Baez, 41 F.3d at 22-25 (collecting cases). For present purposes, it may be assumed that Mendez represents the law in this circuit. Lara-Unzueta, however, does not make out a due process violation. There was no due process violation because Lara-Unzueta had no property or liberty interest in being considered for § 212(c) relief. United States v. Roque-Espinoza, 338 F.3d 724, 729 (7th Cir. 2003) (dictum); Lara-Unzueta, 287 F. Supp. 2d at 893; United States v. Aguirre-Tello, 353 F.3d 1199, 1204-05 (10th Cir. 2004) (en banc) (collecting cases). Thus, Lara-Unzueta does not satisfy a possible exception to § 1105a(c)'s departure provision. Additionally, even if there was jurisdiction over the habeas petition, for the reasons just given, the due process claim would fail on its merits.[15]

Because Lara-Unzueta departed from the United States after he was ordered removed, there is no jurisdiction to consider his habeas corpus petition. 8 U.S.C. § 1105a(c) (1995).

---

[15]If there were jurisdiction to consider the habeas petition, Lara-Unzueta might very well succeed on his other claim. In habeas proceedings related to immigration matters, errors of law are a basis for relief. St. Cyr, 533 U.S. at 305-06. The legal error of applying the AEDPA version of § 212(c) to Lara-Unzueta's situation is an error that could be a basis for habeas corpus relief. Id.; Leitao, 311 F.3d at 456. If jurisdiction over the petition were appropriate, Lara-Unzueta may have been entitled to relief effectively directing respondent to consider whether Lara-Unzueta was eligible for relief under the pre-AEDPA version of § 212(c).

However, because Lara-Unzueta has not had an opportunity to address this jurisdictional issue, his petition will not presently be dismissed. To the extent Lara-Unzueta disagrees with today's ruling, he may file a motion for reconsideration. Any motion for reconsideration should be filed by no later than three weeks after the date of today's ruling. If a motion for reconsideration is filed, respondent will be granted two weeks to answer. If no motion for reconsideration is filed, a judgment dismissing the habeas petition for lack of subject matter jurisdiction will be entered shortly after the three-week time period expires.

IT IS THEREFORE ORDERED that respondent's motion to dismiss [3-1] is granted. Petitioner is granted leave to file a motion for reconsideration within three weeks after the date of today's order.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED: APRIL 19 , 2004